IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

ALPHONCY DANGERFIELD,

                Plaintiff,

  v.                                              OPINION and ORDER

CHAPLAIN EWING, MS. WILLARD WEST,              18-cv-737-jdp
and JAMES SCHWOCHERT,

                Defendants.

---

Plaintiff Alphoncy Dangerfield, appearing pro se, is an inmate at Oshkosh Correctional Institution. Dangerfield alleges that when he was incarcerated at Wisconsin Secure Program Facility, prison officials violated his right to practice Islam by denying him meals timed to accommodate his fasting during Ramadan. Dangerfield brings claims under the First Amendment's Free Exercise Clause, the Fourteenth Amendment's Equal Protection Clause, and the Religious Land Use and Institutionalized Persons Act. Defendants have filed a motion for partial summary judgment only on Dangerfield's equal protection claim, based on Dangerfield's alleged failure to exhaust the administrative remedies on that claim. Dkt. 23. Dangerfield has filed his own motion for summary judgment on the merits of his free exercise and RLUIPA claims. Dkt. 14. I will grant defendants' exhaustion-based motion and dismiss Dangerfield's equal protection claim. I will deny Dangerfield's motion for summary judgment on the merits of his claims.

A. **Exhaustion**

Under the Prison Litigation Reform Act, "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The

exhaustion requirement is mandatory and applies to all inmate suits. *Woodford v. Ngo*, 548 U.S. 81 (2006); *Porter v. Nussle*, 534 U.S. 516, 524 (2002). Section 1997e(a) requires "proper exhaustion," *Woodford*, 548 U.S. at 93; *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002), which means that the prisoner must follow prison rules when filing the initial grievance and all necessary appeals, "in the place, and at the time, the prison's administrative rules require." *Burrell v. Powers*, 431 F.3d 282, 284–85 (7th Cir. 2005).

Dangerfield alleges that he requested to be placed on the Ramadan-meal list, but that request was denied because he did not make it before the 60-day deadline for such a request. Defendants contend that Dangerfield's inmate grievance about the denial of his request to be placed on the Ramadan-meal list did not serve to exhaust his equal protection claim because it did not put prison officials on notice that Dangerfield was complaining about Muslim inmates being treated differently from anyone else. In his complaint in this lawsuit, Dangerfield says that his request to be placed on the Ramadan list was denied for being past the deadline for such requests, but that prison officials overlook similar deadlines for Jewish inmates. In his inmate grievance, Dangerfield complained only about the denial itself; he did not state that inmates of other faiths were allowed to ignore the deadlines. *See* Dkt. 25-2, at 10.

Dangerfield contends that he is not required to state in his grievance every legal theory underpinning his claims, citing *Wine v. Pollard*, No. 08-cv-173-bbc, 2008 WL 4379236, at *2 (W.D. Wis. Sept. 23, 2008). He is correct that he doesn't need to articulate each *theory*. But he does need to "alert[ ] the prison to the nature of the wrong for which redress is sought." *Strong v. David*, 297 F.3d 646, 650 (7th Cir. 2002). And the state of Wisconsin at least requires that the complaint "must contain sufficient information for the department to investigate and decide the complaint." Wis. Admin. Code § 310.07(6).

This court has previously dismissed retaliation claims when an inmate's grievance did not identify the protected conduct that provoked the retaliation and the retaliatory act, because without those facts, the grievance examiner would not be alerted to the nature of the problem the inmate is complaining about. *E.g.*, *Lockett v. Goff*, No. 17-cv-93-jdp, 2017 WL 4083594, at *2 (W.D. Wis. Sept. 13, 2017); *Sheahan v. Suliene*, No. 12-cv-433-bbc, at *3–4 (W.D. Wis. May 24, 2013). I conclude that Dangerfield has a similar problem here. Dangerfield alerted the examiner to what he believed was an inappropriate denial of his right to exercise his religion, which is enough to exhaust his religion-based claims. But the nature of his equal protection claim is that his request was treated differently that requests made by Jewish inmates, which suggests a system-wide problem with discrepancies in the religious-meal-request process. Dangerfield did not put the examiner on notice about this problem. So I conclude that Dangerfield's grievance was not specific enough to exhaust an equal protection claim, and I will dismiss that claim without prejudice for Dangerfield's failure to exhaust it. *Ford v. Johnson*, 362 F.3d 395, 401 (7th Cir. 2004) (dismissal for failure to exhaust is always without prejudice). Dangerfield may find it difficult to exhaust his claim now because so much time has passed since the events at issue.

## B. Dangerfield's motion for partial summary judgment

That leaves Dangerfield's free exercise and RLUIPA claims. Dangerfield moved for summary judgment on the merits of these claims very early in the proceedings, immediately following the court's December 11, 2018 preliminary pretrial conference. The court postponed defendants' opposition briefing to coincide with defendants' own motion for summary judgment on the merits, following a ruling on the exhaustion motion. *See* Dkt. 30. But even without the benefit of an opposition, I conclude that Dangerfield does not support his claims

with enough detail for a reasonable jury to conclude that he is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

Plaintiffs can obtain only declaratory and injunctive relief through RLUIPA, not damages. *See Grayson v. Schuler*, 666 F.3d 450, 541 (7th Cir. 2012); *Vinning-El v. Evans*, 657 F.3d 591 (7th Cir. 2011). I previously dismissed a similar RLUIPA claim as moot when one could only speculate about whether the restriction still burdened the prisoner. *See Brim v. Donovan*, No. 15-cv-658-jdp, 2017 WL 3972519, at *11 (W.D. Wis. Sept. 7, 2017). Dangerfield does not explain why he thinks the signup rule is going to be a problem for him in the future: he's aware of the deadline now and he's been moved to a new institution. Dangerfield says that it's *unfair* that he was denied Ramadan meals while Jewish inmates are granted deadline exceptions for their religious meals, but that isn't the same as showing how the deadline is a burden for him.

With regard to Dangerfield's free exercise claims, Dangerfield must show that the challenged restriction is not reasonably related to a legitimate penological interest. *Turner v. Safley*, 482 U.S. 78, 89 (1987); *see also O'Lone v. Estate of Shabazz*, 482 U.S. 342 (1987). This requires the court to consider four factors: (1) whether there is a "valid, rational connection" between the restriction and a legitimate governmental interest; (2) whether the prisoner retains alternatives for exercising the right; (3) the impact that accommodation of the right will have on prison administration; and (4) whether there are other ways that prison officials can achieve the same goals without encroaching on the right. *Turner*, 482 U.S. at 89–91. Common sense dictates, and my experience with Ramadan-meal cases confirms, that the Department of Corrections has at least some logistical rationale for forcing prisoners to sign up for Ramadan meals months in advance of the fast. *See, e.g.*, *Riley v. Ewing*, No. 15-cv-592-jdp, 2019 WL

188511, at *2 (W.D. Wis. Jan. 14, 2019) (prison officials order food for Ramadan meals different from that for ordinary meals because the Ramadan-meal items are meant to last until the morning, and staff needs to adjust its usual food order to account for dozens of prisoners ordering those special meals).

Dangerfield's only evidence submitted in support of his free exercise claims are his own one-page declaration and a religious publication describing the importance of Ramadan. Dkt. 17 and Dkt. 17-1.[1] I recognize the importance of Ramadan to Muslims in general and to Dangerfield in particular. But Dangerfield does not discuss how meals are provided at WSPF or otherwise develop a case for why the deadline here fails to pass muster under the *Turner* factors. So I will deny his motion for summary judgment.

But that does not mean that Dangerfield is foreclosed from having judgment entered in his favor later in the case. When defendants file their own motion for summary judgment (I'll set a new deadline for that motion in the order below), Dangerfield will have the opportunity to submit proposed findings about Ramadan meals and the prison's provision of those meals, to support his claims. If the later summary judgment briefing shows that there are no genuine disputes of material fact, I will grant summary judgment to the party who deserves it as a matter of law.

---

[1] Dangerfield submits a second declaration, that of a Jewish prison, but that shows only that the other inmate received a Passover meal even though he signed up after the deadline.

ORDER

IT IS ORDERED that:

1. Defendants' motion for summary judgment based on plaintiff Alphoncy Dangerfield's failure to exhaust his administrative remedies, Dkt. 23, is GRANTED on Dangerfield's equal protection claim.

2. Plaintiff's motion for partial summary judgment, Dkt. 14, is DENIED.

3. Defendants' deadline to file a motion for summary judgment on the merits is November 12, 2019.

Entered September 17, 2019.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge