IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

ALPHONCY DANGERFIELD,

                Plaintiff,

v.                                                          OPINION and ORDER

DAVID EWING, KELLI WILLARD WEST,                  18-cv-737-jdp
and JAMES SCHWOCHERT,

                Defendants.[1]

---

Plaintiff Alphoncy Dangerfield, appearing pro se, is an inmate at Oshkosh Correctional Institution. Dangerfield alleges that when he was incarcerated at Wisconsin Secure Program Facility, prison officials violated his right to practice Islam by denying him meals timed to accommodate his fasting during Ramadan. Dangerfield requested special Ramadan meals long after the deadline for doing so, set for 60 days before the start of Ramadan.

I previously granted defendants' motion for summary judgment on Dangerfield's failure to exhaust his administrative remedies for his equal-protection claim. Dkt. 33. Dangerfield's remaining claims fall under the Religious Land Use and Institutionalized Persons Act (RLUIPA) and the First Amendment's Free Exercise Clause. Dangerfield moved for summary judgment on the merits of these claims early in the proceedings, immediately following the court's preliminary pretrial conference. Dkt. 14. I denied that motion because Dangerfield did not support his claims with enough detail for a reasonable jury to conclude that he was entitled to judgment as a matter of law. Defendants have now filed their own motion for summary judgment on these claims. Dkt. 34. Dangerfield did not file materials directly opposing

---

[1] I have amended the caption to include defendants' first and last names.

defendants' motion; I will consider the materials he filed in support of his own summary judgment motion to be his opposition.

I will grant defendants' motion for summary judgment on all of Dangerfield's claims, mainly because the undisputed facts show that the 60-day deadline for prisoners to sign up for special Ramadan meals is an appropriate way to give prison officials enough time to efficiently prepare those meals, under either RLUIPA or First Amendment standards. The case will be dismissed.

## UNDISPUTED FACTS

The following facts are undisputed unless otherwise noted.

**A. Parties**

Plaintiff Alphoncy Dangerfield is a state of Wisconsin inmate who practices Islam. This case concerns his request to be placed on the list to be given special Ramadan meals in 2018. Dangerfield was incarcerated at WSPF, in Boscobel, Wisconsin, during this time.

Defendant David Ewing was the chaplain at WSPF. Defendant Kelli Willard West was the Division of Adult Institution (DAI) religious practices coordinator. Defendant James Schwochert was the DAI administrator.

**B. DOC and WSPF food services**

During Ramadan, observant Muslims fast from sunrise to sunset. WSPF's Food Services department prepares meal bags that are delivered to inmates to consume after sunset and before sunrise every day of Ramadan. Each meal bag contains a day's allotment of calories and nutrition to be eaten during non-fasting hours. But inmates must sign up in advance for Ramadan meals. DAI Policy and Procedure 309.61.03 governs how facilities administer

2

religious diets: inmates must request an accommodation at least 60 days before the first meal in the special period. This policy applies not only to Ramadan, but to any religious special meal or fasting.

There are exceptions to the 60-day deadline for prisoners who have just been taken into custody, and for those who have just been transferred to a new facility, if the inmate had properly requested accommodation at a previous facility. Defendant Ewing was not involved in drafting any version of this policy, and defendants say that he had no authority to depart from it.

The Ramadan meal bag program requires considerable advance planning and coordination between the food services administrators at each DOC facility and the department dieticians and budget staff. Food Services at WSPF starts planning for Ramadan about three months in advance.

Various types of meal bags are prepared, including the standard "general fare" bag, and bags that are Halal, plant-based, or dairy-free. There are also special bags adjusted to account for various medical needs, such as low-sodium or low-fat/cholesterol diets, or for inmates with peanut or soy allergies. Defendants say that the content of the Ramadan meal bags is different than the regular meals because the bag meals are intended to be eaten without being warmed up, and they need to last until the morning. They contain items like sandwiches, fresh fruit and vegetables, and high-calorie foods.

The precise number of each type of Ramadan bag depends on which inmates sign up to participate. Participation in Ramadan varies from year to year. From 2011 to 2018, WSPF had between 61 and 84 inmates participating in Ramadan.

The DOC's dietetic services director reviews each facility's proposed Ramadan menus for budgeting purposes and to ensure caloric and nutritional requirements are met. The director considers whether changes are needed because of product availability, ingredients, packaging, or updates to nutritional standards or serving sizes. If a menu needs to be adjusted, there may be "significant back and forth" with the facility to hammer out an acceptable menu. Dkt. 36, at 8, ¶ 40. Once a menu is approved, the DOC tries to give its vendor the menus four to eight weeks in advance of the facilities' orders to give the vendor time to acquire adequate stock.

Once food is ordered, it can take up to four weeks for an institution to receive the orders, depending on order quantity and whether products are readily available. At WSPF, Ramadan food is thawed up to two weeks in advance. Meals are prepared three to four days before they are delivered to inmates.

WSPF Food Services prepares Ramadan meals only for those inmates who signed up in advance to participate; it does not prepare extra Ramadan meals. In the event an inmate is transferred to WSPF who is participating in Ramadan, either during Ramadan or within 60 days before the start of Ramadan, Food Services will adjust the meals using the existing food supply to accommodate that inmate. But this puts a strain on Food Services' resources; they are able to accommodate no more than a few exceptions.

Dangerfield says that the food in the bags is the same as the food WSPF usually serves, which I take to be an attempt to show that additional meal bags could be created with minimal effort. But he does not explain this point in any detail; for instance, he does not suggest that the combination and amount of food in ordinary meals and Ramadan bags are so similar that no pre-Ramadan planning is necessary. So he has not provided sufficient facts to dispute defendants' assertions that creation of the Ramadan bags takes significant advance planning.

## C. Dangerfield's 2018 request

In 2017, Dangerfield signed up for Ramadan meals in advance of the 60-day deadline and received the Ramadan meal bags. In 2018, Ramadan began on May 15. The deadline for inmates to sign up for the accommodation was March 17, 2018. WSPF staff gave notice of the deadline by posting the deadline on the institution's television channel, on the units, and in the chapel. Nonetheless, Dangerfield says that he was not "placed on notice" of the deadline. Dkt. 16, at 1, ¶ 8.

On April 13, Dangerfield sent a note to Ewing stating, "Please put me on the list for Ramadan Fest. I get on the list every year. Thank you." Dkt. 1-1. Ewing responded, "Sign up deadline was 3/17." In his declaration, Ewing reiterates that the reason he denied Dangerfield's request was that it was made after the 60-day deadline. Dangerfield says that he followed up by writing letters to defendants Willard West and Schwochert and the non-defendant DOC secretary. Both Willard West and Schwochert say that they did not receive a letter from Dangerfield.

Dangerfield says that without the meal bags, he eventually had to break his Ramadan fast because "he could not take it anymore." Dkt. 16, at 2, ¶ 16. Defendants say that he could have bought food from the canteen to eat in place of the Ramadan meals. They provide receipts showing that Dangerfield bought about $100 of food during the month.

Dangerfield says that he knows that extra Ramadan meal bags were available that he could have been given, although he doesn't explain how he knows this. Defendants say that there were rarely extra bags available and that if they made an exception for Dangerfield, they would have to make an exception for everyone, causing the system to break down.

Dangerfield says that, unlike Muslim inmates, Jewish inmates have been allowed to sign up for religious meals past the 60-day deadline. He provides the declaration of Nicholas R. McAtee, who says that he is Jewish and that Ewing allowed him to sign up after the 60-day deadline for Passover at WSPF in 2018. Defendants say that Jewish inmates were not treated differently than Muslim inmates.

ANALYSIS

**A. RLUIPA**

I'll start with Dangerfield's RLUIPA claim for injunctive relief, because RLUIPA provides broader protection for religious liberty than does the First Amendment. *See Holt v. Hobbs*, 574 U.S. 352, 135 S. Ct. 853, 860 (2015). So if Dangerfield's RLUIPA claim fails, his free-exercise claims under the First Amendment would fail, too. *Tanksley v. Litscher*, No. 15-cv-126-jdp, 2017 WL 3503377, at *3 (W.D. Wis. Aug. 15, 2017). Dangerfield has been transferred from WSPF, but it appears that the 60-day Ramadan-meal signup deadline applies to all Wisconsin prisons, so his claim for injunctive relief is not moot.

RLUIPA prohibits prison officials from "impos[ing] a substantial burden on the religious exercise" of an inmate "unless the government demonstrates that imposition of the burden on that person . . . is the least restrictive means of furthering [a] compelling governmental interest." 42 U.S.C. § 2000cc-1(a). *See also Grayson v. Schuler*, 666 F.3d 450, 451 (7th Cir. 2012). To prove a RLUIPA claim, the plaintiff has the initial burden to show that he has a sincere religious belief. *Holt v. Hobbs*, 135 S. Ct. 853, 862 (2015). The parties do not dispute that Dangerfield has a sincere belief that fasting during Ramadan is a practice required by his faith.

Dangerfield also has the burden to show that DOC's policies substantially burden his religious exercise. *See Koger v. Bryan*, 523 F.3d 789, 796 (7th Cir. 2008). Defendants concede for purposes of their summary judgment motion that Dangerfield's religious exercise was substantially burdened by the denial of Ramadan meal bags under the 60-day-deadline policy. Therefore, the burden shifts to defendants to show that their rules are the least restrictive means of furthering a compelling governmental interest. *Id.* Defendants identify the compelling government interests here as "prison administration and cost control." Dkt. 35, at 5. They've provided a fairly detailed explanation of the lengthy advanced planning that goes into ordering food and preparing prisoners' meals generally and Ramadan meal bags in particular, which Dangerfield does not place into dispute.

RLUIPA affords some deference to officials in prison operations. "[I]n applying RLUIPA's statutory standard, courts should not blind themselves to the fact that the analysis is conducted in the prison setting." *See Holt*, 135 S. Ct. at 866. But the standard Congress enacted in RLUIPA is "exceptionally demanding" on the government. *Id.* at 864 ("Congress enacted RLUIPA . . . in order to provide very broad protection for religious liberty."). "Saving a few dollars is not a compelling interest, nor is a bureaucratic desire to follow the prison system's rules." *Schlemm v. Wall*, 784 F.3d 362, 365 (7th Cir. 2015).

Dangerfield's case is similar to a recent WSPF Ramadan-meal-bag case before me. *Lee v. Ewing*, No. 18-cv-370-jdp (W.D. Wis.). In that case, I stated that "[d]efendants' explanation of the acquisition and preparation processes for special meals satisfies me that a reasonably firm 60-day notification deadline is acceptable as part of the least restrictive means of accomplishing the DOC's interests." *Lee*, 2019 WL 4737057, at *6 (W.D. Wis. Sept. 27,

2019). Defendants have provided virtually identical facts here outlining the process by which they prepare Ramadan meal bags.

I denied summary judgment to defendants in *Lee* because the plaintiff in that case alleged that he *did* submit a Ramadan-meal request before the 60-day deadline but was left off anyway; defendants were unable to show that their strict enforcement of the 60-day deadline was truly the least restrictive means if it did not include an error-correcting mechanism for prisoners who timely request the Ramadan meals but are left off because of mistake or staff wrongdoing. *Id.* But that's not what happened here. Dangerfield made his request about a month after the deadline had passed. As I concluded in *Lee*, "prison officials need a reasonably firm deadline, because they would not be able to accommodate a large number of late requests. After all, a late request to be placed on the Ramadan list is a late request for 60 special meals." *Id.* On its face, the 60-day deadline does not violate RLUIPA.

Dangerfield raises two other arguments. In support of his now dismissed equal protection claims, Dangerfield alleged that prison officials overlooked the deadline rules for Jewish prisoners. With proper support, a RLUIPA plaintiff might be able to show that a policy was not the least restrictive means to advance the state's interest if in practice prison staff didn't actually apply it to every group. But the scant evidence provided by Dangerfield here comes nowhere close to making that showing. The only evidence Dangerfield provides is the denial of his request and a declaration from fellow inmate McAtee, a Jewish prisoner who was allowed an exception to the 60-day deadline for Passover by Ewing. Neither Dangerfield nor McAtee explain anything about the circumstances surrounding McAtee's request—such as how far in advance McAtee made it, what Ewing knew about the availability of a seat at the Passover meal, or any details about the difficulty in arranging for another participant. Without more

8

than an isolated example of Ewing coming to different conclusions about two different requests of unknown similarity, no reasonable factfinder could conclude from this evidence that the 60-day deadline policy violates RLUIPA.

Dangerfield also argues that he was not notified of the March 17 deadline for requesting Ramadan meals. But he doesn't dispute that he complied with the deadline the previous year, nor does he directly dispute defendants' account that notices of the deadline were posted on the institution's television channel, on the units, and in the chapel. And in any event, there's no dispute that Dangerfield knows about the deadline now, so there is no reason to think that he needs injunctive relief on this aspect of his claim. I will grant summary judgment to defendants on Dangerfield's RLUIPA claim.

## B. First Amendment free exercise

Dangerfield brings parallel First Amendment free-exercise claims for damages against defendants. To establish a free-exercise claim, Dangerfield must "submit evidence from which a jury could reasonably find that the defendant[] personally and unjustifiably placed a substantial burden on his religious practices." *Neely-Bey Tarik-El v. Conley*, 912 F.3d 989, 1003 (7th Cir. 2019) (quoting *Thompson v. Holm*, 809 F.3d 376, 379 (7th Cir. 2016)). A substantial burden is one that "put[s] substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Thomas v. Review Bd.*, 450 U.S. 707, 718 (1981). In the prison context, such a burden is justified if it is "reasonably related to a legitimate penological interest." *Thompson*, 809 F.3d at 380 (citing *Turner v. Safley*, 482 U.S. 78, 89–91 (1987)).

Defendants contend that none of them should be liable because Ewing was merely following the DOC's policy, and neither Willard West nor Schwochert were personally responsible for the denial. I need not consider these issues because Dangerfield's First

9

Amendment claims fail for the same reasons as his RLUIPA claim: the 60-day deadline policy is reasonably related to the state's interest in having enough time to prepare cost-effective religious meals.

I must also grant summary judgment to defendants because under the doctrine of qualified immunity. That doctrine shields officials from civil liability so long as their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (internal quotation omitted). A clearly established right is one that is sufficiently clear such "that every reasonable official would have understood that what he is doing violates that right." *Reichle v. Howards*, 566 U.S. 658, 664 (2012). In other words, "existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011). Dangerfield bears the burden of demonstrating that his rights were clearly established to overcome qualified immunity. *Hernandez ex rel. Hernandez v. Foster*, 657 F.3d 463, 473 (7th Cir. 2011).

Dangerfield says that it is clearly established that prison officials can't intentionally prevent religious practice without penological justification. That's true, but that proposition is far too general to resolve the question whether the deprivation here violated a clearly established right. When considering whether qualified immunity applies, courts cannot "define clearly established law at a high level of generality." *Mullenix*, 136 S. Ct. at 308. The "dispositive question is 'whether the violative nature of particular conduct is clearly established.'" *Id.* (*quoting al-Kidd*, 563 U.S. at 742). In other words, "the clearly established law must be 'particularized' to the facts of the case." *White v. Pauly*, 137 S. Ct. 548, 552 (2017) (citation

omitted); *see also City of Escondido, Cal. v. Emmons*, 139 S. Ct. 500, 503 (2019) ("[T]he clearly established right must be defined with specificity.").

Dangerfield doesn't identify a Supreme Court or Seventh Circuit court of appeals case in support of his free-exercise claim. I previously concluded in *Lee* that there were no such cases to support a free-exercise claim about the 60-day deadline. 2019 WL 4737057, at *8. And I concluded in another similar Ramadan case that qualified immunity applied regarding the question whether prison staff must notify inmates of the precise religious-meal-signup deadline date each year. *See Riley v. Ewing*, No. 15-cv-592-jdp, 2019 WL 188511, at *8 (W.D. Wis. Jan. 14, 2019), *aff'd*, 777 F. App'x 159 (7th Cir. 2019).

ORDER

IT IS ORDERED that:

1. Defendants' motion for summary judgment, Dkt. 34, is GRANTED.
2. The clerk of court is directed to enter judgment for defendants and close this case.

Entered January 8, 2020.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge